GEORGE M. HARD, Respondent, *v.* ROSA MINGLE, as Executrix of SAMPSON Q. MINGLE, Deceased, Appellant.

Guaranty and suretyship — rights and liabilities of co-sureties or co-guarantors, as between themselves — rights and duties of creditors, holding guaranty of payment, against sureties or guarantors.

1. A creditor must not by his action destroy or impair the rights of sureties as between themselves, but mere delay to prosecute sureties in the absence of any request to do so does not discharge a surety who may subsequently find himself prejudiced by such delay.

2. The right of action for contribution between sureties grows out of the original implied agreement that if one shall be compelled to pay the whole or a disproportionate part of the debt for which all collaterally and provisionally stipulate to be liable, the others will pay such a sum as will make the common burden equal; and in case of the death of either, this obligation devolves upon his legal representatives.

3. A co-surety or a co-guarantor cannot step in and pay a claim upon which he has been discharged of liability, by reason of the running of the Statute of Limitations, and then compel contribution by his co-surety or co-guarantor. But so long as he is legally liable upon his guaranty, he may pay the claim and may then seek contribution from his co-guarantors. The statute, as to him, does not commence to run until he has paid the claim, and not until such payment has he the right to exact contribution.

4. The holder of a joint and several guaranty of payment is not obliged to incur the expense of employing attorneys and prosecuting an action against the estate of a deceased guarantor, but has the right to call upon the living guarantors to pay the whole amount, and then they may look to the decedent's estate for contribution. (*Tobias* v. *Rogers*, 13 N. Y. 59; *Waggoner* v. *Walrath*, 24 Hun, 443; 92 N. Y. 639, distinguished.)

*Hard* v. *Mingle*, 141 App. Div. 170, affirmed.

(Argued June 17, 1912; decided October 1, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 5, 1911, upon an order reversing a judgment in favor of defendant entered upon a dismissal of

the complaint by the court at a Trial Term without a jury, and directing judgment in favor of plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*W. H. Van Benschoten* and *Charles H. Edwards* for appellant. The fundamental and essential requisite to the right of contribution is that the party seeking contribution has discharged some debt or obligation which the one from whom he seeks contribution was equally bound with him to discharge, and that he has removed a common burden from both of them. (7 Am. & Eng. Ency. of Law, 326; *Aspinwall* v. *Sacchi,* 57 N. Y. 335; *Lee* v. *Larkin,* 125 App. Div. 304; *Wells* v. *Miller,* 66 N. Y. 258; *Lowndes* v. *Pickney,* 1 Rich. Eq. 155; *Blanchard* v. *Blanchard,* 201 N. Y. 134.) By the failure and neglect of the Chatham National Bank to commence an action against the estate of Mingle on the claim in question within six months after the rejection of the claim, the bank not only lost its remedy, but the claim or obligation or debt, whatever it may be called, was extinguished, and that estate was absolutely discharged from all obligation and liability as to such claim. (*Flynn* v. *Diefendorf,* 51 Hun, 197; *Butler* v. *Johnson,* 111 N. Y. 204; *Matter of Kendrick,* 107 N. Y. 108; *Schultz* v. *Morette,* 146 N. Y. 143; *Thompson* v. *Hoxsie,* 25 R. I. 377.) The plaintiff, when he paid the note on October 20, 1906, did not discharge a debt or obligation which the estate of Mingle or the defendant was either legally or morally bound to discharge, and did not in any way remove any burden resting upon defendant or her testator's estate, and hence there is no basis for a claim of contribution. (*Tobias* v. *Rogers,* 13 N. Y. 59; *Waggoner* v. *Walrath,* 24 Hun, 443; 92 N. Y. 639; *Staples* v. *Gokey,* 34 Hun, 289; *Screven* v. *Joyner,* 1 Hill Eq. 252; *Shelton* v. *Farmer,* 9 Bush, 314; *Cochran* v. *Walker,* 82 Ky. 220; *Glasscock* v. *Hamilton,* 62 Tex. 143; *Horbach* v. *Elder,* 18 Penn.

33; *McLin* v. *Harvey*, 69 S. E. Rep. 123.) The plaintiff was not liable to the bank for the full amount of the debt. (Story's Eq. Juris. [13th ed.] § 326; *Waggoner* v. *Walrath*, 24 Hun, 443; *Benedict* v. *Rea*, 35 Hun, 34; *Morgan* v. *Smith*, 70 N. Y. 537; *Staples* v. *Gokey*, 34 Hun, 289.) ·Even if the plaintiff had been liable to the bank for the full amount of the debt when he paid it, the right of contribution would not exist in this case. (*Staples* v. *Gokey*, 34 Hun, 289; *Tobias* v. *Rogers*, 13 N. Y. 59; *Waggoner* v. *Walrath*, 24 Hun, 447.)

*Harold Otis* for respondent. The plaintiff, having been liable to the bank for the full amount of the debt and having paid the bank the full amount thereof, thereupon acquired a right to contribution from the defendant, although the bank's remedy against the latter was at the time of payment barred by limitation. (*Blanchard* v. *Blanchard*, 201 N. Y. 134; *Benedict* v. *Rea*, 35 Hun, 34; *Wood* v. *Leland*, 1 Metc. [Mass.] 387; *Camp* v. *Bostwick*, 20 Ohio St. 337; *Reeve* v. *Pullian*, 68 Tenn. 153; *Williams* v. *Ewing*, 31 Ark. 229; *Aldrich* v. *Aldrich*, 56 Vt. 324; *Crosby* v. *Wyatt*, 23 Me. 156; *Boardman* v. *Paige*, 11 N. H. 431; *Peaslee* v. *Breed*, 10 N. H. 489; *Cawthorne* v. *Weisinger*, 6 Ala. 714; *Sibley* v. *McAllaster*, 8 N. H. 389; *Norton* v. *Hall*, 41 Vt. 471; *Marshall* v. *Hudson*, 17 Tenn. 57; *Miller* v. *Woodward*, 8 Mo. 169; *Godfrey* v. *Rice*, 59 Me. 308.) The plaintiff continued to be liable to the bank for the full amount of the note after the bank's claim against the defendant was, as the plaintiff knew, barred by limitation. (*Payne* v. *Gardiner*, 29 N. Y. 146; *Cutler* v. *Wright*, 22 N. Y. 472; *Denny* v. *Smith*, 18 N. Y. 567; *Hixson* v. *Rodbourn*, 67 App. Div. 424; *Davis* v. *Kinney*, 1 Abb. Pr. 440; *Winchell* v. *Hicks*, 18 N. Y. 558; *Staples* v. *Gokey*, 34 Hun, 289; *Blanchard* v. *Blanchard*, 201 N. Y. 134; *Fowler* v. *Wood*, 78 Hun, 304; 150 N. Y. 584; *Simonson* v. *Nafis*, 36 App. Div. 473.)

HAIGHT, J. On the 20th day of July, 1899, the plaintiff, George M. Hard, one Edward Thompson, and the decedent's testator, Sampson Q. Mingle, executed and delivered to the Chatham National Bank the following instrument: "For value received and for the purpose of giving the Realty Corporation of North America credit at the Chatham National Bank of New York, we hereby jointly and severally guarantee the payment at maturity of all checks, drafts and promissory notes upon which said Realty Corporation of North America is now or hereafter shall be liable, to said bank, as maker, endorser, drawer or acceptor, to an amount not exceeding $15,000, hereby waiving demand and notice of non-payment thereof, this to be a continuing guaranty."

On the 13th day of July, 1903, the Realty Corporation executed and delivered its promissory note for $15,000, payable in three months from date, to one Gilbert, who indorsed and delivered the same before maturity for value, to the Chatham National Bank.

On September 15th, 1903, and before said note became due, Mingle died, leaving a last will and testament which has been admitted to probate, whereby he appointed his widow, the defendant, sole executrix, to whom the Chatham National Bank, in due time, presented a claim against the estate of her testator for the principal and interest accrued upon the note, above referred to, which claim was rejected by the executrix, and inasmuch as no action was brought by the bank within the time specified by section 1822 of the Code of Civil Procedure, the claim became barred by that provision of the statute. Thereafter and on or about the 14th day of February, 1906, the defendant caused a written notice to be served upon the plaintiff advising him that the Statute of Limitations had run, as against the claim presented by the bank; that the estate had thereby been relieved from liability upon the note, and that if the plaintiff paid it he did so at his own peril and on his own liability, without right

of contribution by the estate. The plaintiff, however, did, on the 20th day of October thereafter, pay the bank the amount of the note with interest accrued thereon, and then brought this action to recover the sum of $5,603.89, one-third of the amount so paid by the plaintiff. The Realty Corporation became insolvent upon the maturing of the note, and no part of the same had been paid to the bank until the payment made by the plaintiff. The learned Special Term found as conclusions of law that the claim of the bank against the estate of Mingle, deceased, was barred by the short Statute of Limitations, and that the statute operated to discharge the other guarantors from liability claimed by the bank, to the amount of one-third thereof; and that, therefore, the plaintiff was only liable to the bank for the remaining two-thirds of its claim; and, further, that the estate of Mingle having been discharged from liability, by reason of the Statute of Limitations, it is no longer liable for contributions to his co-guarantors.

We have had some doubts as to the disposition that should be made of this case, owing to an omission in both the allegations of the complaint and the findings of fact. In neither is the date given of the discount of the note by the Chatham National Bank. In each it is stated that the note was delivered before maturity, but the maturity of the note occurred nearly a month after the death of Mingle. If the note was discounted by the bank before the death of Mingle, his estate undoubtedly would be liable, under section 758 of the Code of Civil Procedure. But if the note was purchased after his death, especially if the bank had notice of such death, we do not understand that his estate would be liable. (*National Eagle Bank* v. *Hunt*, 16 R. I. 148–153; *Jordan* v. *Dobbins*, 122 Mass. 168–170; *Coulthart* v. *Clementson*, L. R. [5 Q. B. Div.] 42–46; *Pratt* v. *Trustees*, 93 Ill. 475.) This question, however, does not appear to have been raised upon the trial nor in the Appellate Division. The parties appar-

ently assumed that the note was transferred to the bank before the death of Mingle, and we have, therefore, concluded to dispose of the case upon that assumption.

It is not our purpose to enter upon an extended digest of the cases bearing upon the question involved, for that has been done fully by Justice CLARKE, who wrote the opinion adopted by the Appellate Division. We do not understand that a co-surety or a co-guarantor can step in and pay a claim upon which he has been discharged of liability, by reason of the running of the Statute of Limitations, and then compel contribution by his co-surety or co-guarantor. But so long as he is legally liable upon his guaranty, he may pay the claim and may then seek contribution from his co-guarantors. The statute, as to him, does not commence to run until he has paid the claim. Then, and not until such payment, has he the right to exact contributions. This right. is founded upon the general principles of equity, that sureties *in æquali jure* must bear the common burden equally, under which the law implies a contract between them to contribute ratably toward discharging any liability which they may incur in behalf of their principal. So long, therefore, as one of their co-sureties remains liable for the principal debt, their liability to contribute continues. It must be borne in mind that while the creditor has nothing to do with the right of the sureties for contribution among themselves, he must not affirmatively do any act tending to impair it. In other words, he must not by his action destroy or impair the rights of sureties as between themselves. If he does, to the extent that he impairs the rights of any one surety, to that extent he diminishes the amount of his recovery against him. But the mere delay to prosecute sureties in the absence of any request to do so does not discharge the surety who may subsequently find himself prejudiced by such delay.

It may be true that the plaintiff, as the president of

the Chatham National Bank, gave directions to have the claim prosecuted against Mingle's estate, but the action was not brought until after the Statute of Limitations had run. We do not, however, understand that the bank by this neglect impaired its right to recover the full amount of the note that it held, with the accrued interest thereon. There were two other guarantors, the plaintiff and Thompson. It was not obliged to incur the expense of employing attorneys and prosecuting an action against the estate of the deceased guarantor, but it had the right to call upon the living guarantors to pay the whole amount of the note and then look to the decedent's estate for contribution. This was the procedure adopted by it, and our conclusion is that the Appellate Division has correctly determined the rights of the parties.

It may be true that there is a conflict in the authorities, and that the precise question here presented may not have been determined by the courts of this state. But the great weight of authorities we think is in favor of the contention of the plaintiff. The leading case upon the subject is doubtless that of *Wood* v. *Leland* (1 Metc. 387), to which the Appellate Division has alluded. In that case the plaintiff and the defendants' father were both sureties on a bond given by one Harrington upon his appointment as a guardian of minor children. The defendants' father died and his estate was distributed among them. Subsequently the plaintiff, by reason of the default of the guardian, was compelled to pay the amount due the children, and then brought this action to compel contribution by the defendants. The defendants in that case interposed the short Statute of Limitations of one year, provided by the statute of Massachusetts, as a defense. Chief Judge SHAW, in delivering the opinion of the court with reference thereto, says: "The plaintiff in fact was not compelled to pay, and did not pay the amount of such balance, until November, 1838, which was more than one year after the breach of the condi-

tion of the bond. Now the defendants contend that as they could not be held responsible to the obligee for such breach of the bond, after one year, so they would not be held liable for a contribution to a surety, after that time. But the court are of the opinion, that the statute of limitations cannot be so applied. It may well be admitted, that the statute of limitations would be a good bar to an action by the obligee against the heirs and legatees; but the right of action by the surety for contribution does not accrue at the breach of the bond, but upon his payment of the money, pursuant to that breach. The suit against him is not barred in one year. Besides, such suit may be brought within the year, but not come to judgment till long after the year; and he cannot be compelled to pay, until judgment is recovered, although he may pay sooner on demand, after a breach, if he choose to do so. But his right of action for contribution, arises when he does pay, and not before. Notwithstanding a breach, the debt may be paid by the principal, or relinquished, or compromised, and the surety never compelled to pay. If so, he never has a cause of action against the co-surety or his representatives. The right of action grows out of the original implied agreement, arising out of there being co-sureties, that if one shall be compelled to pay the whole or a disproportionate part of the debt, for which both thus collaterally and provisionally stipulate to be liable, the other will pay such a sum as will make the common burden equal; and in case of the death of either, this obligation devolves upon his legal representatives." This was followed by *Crosby* v. *Wyatt* (23 Me. 156); *Sibley* v. *McAllaster* (8 N. H. 389); *Peaslee* v. *Breed* (10 N. H. 489); *Boardman* v. *Paige* (11 N. H. 431); *Aldrich* v. *Aldrich* (56 Vt. 324); *Marshall* v. *Hudson* (17 Tenn. 57); *Reeves* v. *Pulliam* (68 Tenn. 154); *Cawthorne* v. *Weisinger* (6 Ala. 714); *Camp* v. *Bostwick* (20 Ohio St. 337); *Koelsch* v. *Mixer* (52 Ohio St. 207); *Seabury* v. *Sibley* (183 Mass. 107); *Martin* v.

*Frantz* (127 Pa. St. 389), and *Bashford* v. *Wells* (96 Pac. R. 663; 18 L. R. A. [N. S.] 580, with note).

In the case of *Tobias* v. *Rogers* (13 N. Y. 59) the plaintiff sought to hold Rogers, the defendant, as a co-surety upon a bond. Rogers, however, had been discharged in bankruptcy, and it was there held that the defendant was not liable to contribution, for under his discharge in bankruptcy he became discharged of all debts, contracts and engagements provable under the act, and that all persons having uncertain or contingent claims against the bankrupt were forever extinguished, and that this included his liability to contribute to a co-surety. It is, therefore, apparent that this case is distinguishable from the one under consideration.

In the case of *Waggoner* v. *Walrath* (24 Hun, 443; affirmed without opinion, 92 N. Y. 639) an action was brought against two sureties to a joint undertaking. Both of the sureties were served, but judgment was entered against one only. It was held that such entry of judgment released the other surety from all liability and that he could not be called upon to contribute ; that the judgment could not be enforced against the surety for more than one-half of the amount of the undertaking. It is true that in the opinion delivered in that case an allusion was made to the case of *Tobias* v. *Rogers*, containing some statements, the meaning of which had apparently been misunderstood. But even in the *Waggoner* case the conclusion was reached that the amount which one of two sureties could recover of his co-surety is what he has paid in excess of his moiety. (See, also, *Morgan* v. *Smith,* 70 N. Y. 537, and *Board of Supervisors of Monroe Co.* v. *Otis*, 62 N. Y. 88.) .

The judgment should be affirmed, with costs.

CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur; GRAY, J., absent.

Judgment affirmed.