**R. C. TWAY CO., Inc.**

v.

**ROBINSON TRUCK & EQUIP-MENT CO., Inc.**

Civ. A. No. 1088.

United States District Court
S. D. Alabama, S. D.

April 7, 1954.

As Amended May 25, 1954.

George F. Wood (of Pillans, Reams, Tappan, Wood & Roberts), Mobile, Ala., for plaintiff.

Vincent F. Kilborn (of Kilborn & Johnson), Mobile, Ala., for defendant.

THOMAS, District Judge.

Defendant sold equipment to the Hoosier Circus Corporation on condi-

tional sale contract. For account of defendant, plaintiff manufactured the equipment, which was of special design. In order to finance contract, both plaintiff and defendant had to endorse same. Circus defaulted. Plaintiff paid on demand, and here seeks to recover contribution from defendant.

### Findings of Fact

(1) The plaintiff, hereinafter referred to as Kentucky, is a corporate citizen of the State of Kentucky; the defendant, hereinafter referred to as Robinson, is a corporate citizen of the State of Alabama. The matter in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

(2) Prior to the 31st day of March 1949, Robinson procured an order from the Hoosier Circus Corporation (hereinafter referred to as Circus), for eleven trailers to be built to specification. Robinson, in turn, ordered the trailers from Kentucky.

(3) Circus followed the progress of the building of the trailers at the plant of Kentucky and furnished the specifications directly to Kentucky. During this period of time Circus was in winter quarters at Louisville, Kentucky, which was the location of Kentucky's plant.

(4) Both Kentucky and Robinson expected to make a profit from the building and the sale, respectively, of the aforesaid trailers.

(5) At the time the order was placed by Circus with Robinson, and at the period of time during the construction of the trailers, it was contemplated by all time Robinson placed the order with Kentucky, and for some substantial parties that the sale of the trailers would be for cash. However, prior to the delivery of the trailers, Circus advised that it would be unable to pay the full amount in cash and offered $7,409.35 in cash, the remainder to be paid in fourteen equal installments, seven to be paid during the 1949 season and seven during the 1950 season. Subsequently, a conditional sale contract incorporating these terms was entered into between Robinson and Circus. When Robinson requested its financing company, Yellow Manufacturing Acceptance Corporation (hereinafter referred to as YMAC), to finance the transaction, it refused, in the absence of a guaranty by Kentucky in addition to the usual dealer's guaranty by Robinson.

(6) Subsequent to this discussion with YMAC, it was agreed between Kentucky and Robinson that, to induce YMAC to finance the transaction, Robinson would execute the dealer's guaranty and Kentucky would execute a separate guaranty printed on the conditional sale contract. The execution of the two guaranties was done contemporaneously. YMAC then accepted an assignment of the said conditional sale contract, containing the two guaranties as aforesaid, and advanced the remainder of the purchase price, from which both Kentucky and Robinson were paid.

(7) Circus paid some installments and defaulted on the balance. Following default and during the month of October 1949, YMAC declared the unpaid balance of the conditional sale contract immediately due and payable, and so advised both Kentucky and Robinson.

(8) YMAC obtained a judgment in Florida against Circus for the balance due, repossessed the trailers and sold them for less than the balance owing by Circus. Both the plaintiff and the defendant knew of this suit during its pendency and before judgment.

(9) Circus was adjudicated a bankrupt on March 3, 1950, in the United States District Court for the Southern District of Indiana. Kentucky, after demand, paid to YMAC on July 17, 1950, the balance due under the aforesaid judgment (plus the costs), a total of $11,839.53; and YMAC assigned the judgment to Kentucky. Kentucky made an oral demand upon Robinson for reimbursement.

(10) During October 1949, Robinson ordered from Kentucky a trailer, separate from those hereinabove discussed, and provided erroneous specifications as to the height of said trailer. The trailer,

built in accordance with those specifications, was damaged by virtue of its height; and Kentucky furnished to Robinson, at Robinson's request, materials to repair the said trailer. These materials had not been paid for at the time this suit was filed, and their reasonable value at time of delivery to Robinson was $86.68.

(11) During the month of December 1949, Kentucky made certain repairs to a trailer belonging to one Roy Wilcox, in reliance upon Wilcox's promise to pay therefor. There was a subsequent oral promise by Robinson to pay, if Wilcox did not. Neither Wilcox nor Robinson paid for these repairs, the reasonable value of which was $675.

(12) During the month of December 1949, Kentucky furnished to defendant at its request certain trailer parts of the reasonable value of $6.98, which parts had not been paid for at the time of filing this suit.

(13) During the month of December 1949, Kentucky sold and delivered to Robinson a trailer, and billed Robinson therefor. Robinson paid the amount billed less 5%, the difference amounting to $357.31. This 5% was claimed by Robinson as a commission. There was no agreement between the parties that such 5% commission should be allowed, and the said $357.31 was unpaid at the time of filing this suit.

## Conclusions of Law

(1) This court has jurisdiction of the cause.

(2) Robinson's guaranty[1] and Ken-

---

1. "Dealer's Recommendation, Assignment and Guaranty "To Yellow Manufacturing Acceptance Corporation:

"To induce you to purchase the within contract, the undersigned submits an accompanying statement which the undersigned believes to be substantially true, unless otherwise hereinafter stated, and certifies that said contract arose from the sale of the goods described in said contract, warranting that the title to said goods was at the time of the sale and is now vested in the undersigned free of all liens and encumbrances and that the undersigned has the right to assign such title.

"For value received, the undersigned does hereby sell, assign and transfer to the Yellow Manufacturing Acceptance Corporation, its successors or assigns, his, its, or their right, title and interest in and to the within and foregoing contract and the goods covered thereby and authorizes said Yellow Manufacturing Acceptance Corporation, its successors or assigns, to do every act and thing necessary to collect and discharge the same.

"In consideration of the purchase of the said contract, the undersigned does hereby guarantee payment of all deferred payments as and at the respective times specified therein and covenants, in the event of the failure of the buyer to make any payment at the respective times and in the manner in said contract provided, or to perform any term, provision, covenant or condition provided by said contract to be made or performed by the buyer at the respective times and in the man-

ner in said contract provided, to pay upon demand the full amount remaining unpaid to Yellow Manufacturing Acceptance Corporation, its successors or assigns. The liability of the undersigned shall not be affected by any indulgence, compromise, settlement, extension of credit or variation of terms effected by or with the buyer or any other person interested. Notice of acceptance of this guaranty, notices of non-payment and non-performance, notices of amount of indebtedness outstanding at any time, protests, demands, and prosecution of collection, foreclosure and possessory remedies, and the right to remove any legal action from the court originally acquiring jurisdiction, are hereby expressly waived. In the event of repossession of the property covered by the within contract for default by buyer. Yellow Manufacturing Acceptance Corporation, its successors or assigns, may, at its election, sell the repossessed equipment at public or private sale and apply the proceeds thereof against the unpaid balance under the written contract or tender the repossessed equipment to the undersigned and the undersigned will pay to Yellow Manufacturing Acceptance Corporation, its successors or assigns the amount of any deficiency established by any such sale or repurchase said property from Yellow Manufacturing Acceptance Corporation, its successors or assigns in the event of tender thereof at a price equal to the unpaid balance of deferred payments at the time of such repossession, including interest, plus any and all costs of repossession.

**548**

tucky's guaranty[2] are substantially in the same language. Each in its separate agreement "does hereby guarantee payment of all deferred payments as specified therein (the Conditional Sale Contract) and covenants in default of payment of any installment * * * thereof by buyer (Circus) to pay full amount remaining unpaid to the seller, his or its * * * successors or *assigns*, upon demand." (Parentheses and italics mine.)

■ (3) The transaction as between Robinson and Kentucky is in the nature of a joint adventure, or at least it turned out to be when it was found that Circus could not pay the purchase price in full on delivery of the trailers. Robinson and Kentucky each anticipated a profit and they joined in procuring the conditional sale contract for the benefit of both. See "Joint Adventures," 30 Am. Jur. 675, and in 48 C.J.S., Joint Adventures, § 1, p. 807; Chisholm v. Gilmer, 4 Cir., 81 F.2d 120. It was necessary that both Robinson and Kentucky guarantee repayment of the loan from YMAC, in

order to obtain it. They both guaranteed repayment for their joint benefit.

■ (4) Kentucky is entitled to recover from Robinson by way of contribution. See 24 Am.Jur., Guaranty, Sections 126–127, p. 957; 38 C.J.S., Guaranty, § 115, p. 1303 et seq.; 18 C.J.S., Contribution, § 1, p. 2; Scott v. McGriff, 222 Ala. 344, 132 So. 177; Wright v. Rumph, 5 Cir., 238 F. 138. It is a matter of equity, and it appears to me to be equitable that Robinson should bear his part of the joint guaranty. YMAC's assignment of the judgment against Circus to Kentucky did not enlarge Kentucky's rights against Robinson; nor did Kentucky lose its rights as against Robinson by payment of the full amount.

■ (5) The judgment of the Circuit Court of Dade County, Florida, having been entered against the principal with full knowledge of the pendency of the suit by both plaintiff and defendant, is conclusive evidence as to the proper measure of damages, in the absence of evidence of fraud and collusion, as to which the record is completely bare.

It is expressly agreed that in case of non-payment of either principal or interest when due, suit may be brought by the holder hereof against any one or more or all of us at the option of the holder, whether such suit has been commenced against the maker or not, and that in any such suit the maker may be joined with one or more or all of us, at the option of the holder.

"Robinson Truck & Eqt. Co. Inc.
(Seller's Signature)
J. A. Robinson Pre
(Official Title, if Company)"

"Guaranty

2. "In consideration of the making of the within contract by the seller therein and/or the purchase thereof by Yellow Manufacturing Acceptance Corporation, the undersigned does hereby guarantee payment of all deferred payments as specified therein and covenants in default of payment of any installment or performance of any requirement thereof by buyer to pay full amount remaining unpaid to the seller, his or its heirs, executors, administrators, successors or assigns upon demand. The liability of the

undersigned shall not be affected by any indulgence, compromise settlement, extension of credit, or variation of terms effected by or with the buyer or any other person interested. Notice of acceptance of this guarantee, notices of non-payment and non-performance, notices of amount of indebtedness outstanding at any time, protests, demands and prosecution of collection, foreclosure and possessory remedies, and the right to remove any legal action from the court originally acquiring jurisdiction, are hereby expressly waived. It is expressly agreed that in case of non-payment of either principal or interest when due, suit may be brought by the holder hereof against any one or more or all of us at the option of the holder, whether such suit has been commenced against the maker or not, and that in any such suit the maker may be joined with one or more or all of us, at the option of the holder.

"Kentucky Mfg. Co.
By R. K. Hughes    (L.S.)
(Guarantor)  Treas.
2601 So. Third, Louisville,
(Address)  Ky."

The unsatisfied portion of that judgment, $11,510.17, together with the necessary costs of the replevy bond, being $329.36, was the proper amount for the plaintiff to pay, and which it did pay, and for which it could seek contribution. In Lake County, for Use and Benefit of Baxley, v. Massachusetts Bonding & Insurance Co., 75 F.2d 6, at page 8, the Fifth Circuit Court of Appeals states the rule this way: "Where it appears that the judgment against the defendant was obtained in a suit of which the surety had full knowledge, and which it had full opportunity to defend, the judgment therein is not only evidence, but conclusive evidence, against every defense except that of fraud and collusion in obtaining it."

Plaintiff and defendant were jointly and severally liable and each had the right to pay the full amount and call on the other for contribution.

 (6) Plaintiff is entitled to interest at the rate of 6% on one-half the sum paid to YMAC by the plaintiff from July 17, 1950, until the date of trial. Allen v. Fairbanks, 2 Cir., 45 F. 445, 27 A.L.R.2d 1268, 1272.

(7) As to the smaller claims incorporated in the same suit, since the defendant ordered the particular parts to repair the trailer discussed in Finding of Fact (10), and has not paid therefor, plaintiff is entitled to recover. Evidence disclosed that the erroneous specifications, which gave rise to the damage, were based upon defendant's order.

(8) The oral promise by the defendant to pay for repairs to the trailer of Roy Wilcox, discussed above, being a promise to pay the debts and defaults of another, plaintiff cannot recover under that promise. Code of Ala.1940, T. 20, Sec. 3.

(9) The parts considered in Finding of Fact (12) were ordered by the defendant and never paid for. Hence, plaintiff is entitled to recover therefor.

(10) There being no agreement to allow a 5% commission on the trailer built for defendant by the plaintiff, spoken of in Finding of Fact (13), defendant is not entitled to take such a commission and is liable for the unpaid portion of the invoiced price to him.

(11) Interest at 6% is allowed on each of the small items for which recovery is had from the date the obligation was incurred until the day of trial.

Judgment in accordance herewith.