## GRANT WALDREF v. LOUIS F. DOW.[1]

July 1, 1927.

No. 26,047.

**Finding sustained that plaintiff could call on defendant for contribution as joint indorser of note.**

1. Plaintiff and defendant indorsed a note to a bank for the accommodation of a corporation in which both were interested. The indorsements were made at the same time and as part of the same transaction. The bank recovered a judgment against the maker of the note. Plaintiff paid and took an assignment of the judgment and brought suit against defendant for contribution. *Held,* that the circumstances indicate that plaintiff and defendant intended to become equally liable as indorsers of the note and that the trial court was justified in finding that they were joint indorsers and in holding that plaintiff could call upon defendant for contribution.

**Defense of laches not good.**

2. Not until three years after the payment of the debt did plaintiff bring this action for contribution. The delay was not prejudicial to the defendant. *Held,* that the defense of laches cannot be successfully asserted.

Bills and Notes, 8 C. J. p. 289 n. 58; p. 291 n. 75, 76, 77, 86.
Contribution, 13 C. J. p. 821 n. 6, 7; p. 822 n. 16, 17, 18, 23; p. 826 n. 74; p. 835 n. 19.
Equity, 21 C. J. p. 221 n. 26; p. 223 n. 30.

See note in 28 L.R.A.(N.S.) 1039; 6 R. C. L. 1052; 6 R. C. L. Supp. 425.

Action in the district court for Ramsey county to compel the defendant to pay his contributive share of a promissory note paid by the plaintiff. There were findings for the plaintiff, and the defendant appealed from an order, Orr, J., denying his motion for a new trial. Affirmed.

*Morphy, Bradford, Cummins, Cummins & Lipschultz,* for appellant.

*Daggett, Pew & Redlund,* for respondent.

[1]Reported in 214 N. W. 767.

Lees, C.

On September 20, 1921, the Waldref Manufacturing Company gave its note of $5,000 to the Produce Exchange Bank of St. Paul, payable 90 days after date. At the time of its execution and delivery it was jointly indorsed by plaintiff and defendant for the accommodation of the company. The note was not paid and, at the request of the defendant, the bank sued and recovered a judgment against the company. In June, 1922, plaintiff paid the judgment and took an assignment from the bank. In March, 1925, the company was placed in the hands of a receiver. Plaintiff requested defendant to pay one-half of the amount he had paid to the bank. Defendant refused to do so, and this suit was brought to compel contribution.

The trial court gave plaintiff judgment, and defendant has appealed from an order denying his motion for a new trial.

[1] The evidence showed that before the note was given defendant was a stockholder and director of the Charles A. Stickney Company and an officer of the bank. That company was the maker of a note to the bank upon which the defendant was an indorser. In June, 1921, the articles of incorporation of the Stickney company were amended and the name of the corporation changed to the Waldref Manufacturing Company. Plaintiff and defendant became directors of this corporation and plaintiff its president.

Defendant requested plaintiff to go to the bank with him and join in the indorsement of the note. The note was executed at the bank and indorsed by plaintiff and defendant at the same time, plaintiff's name being written above defendant's. When the note fell due the bank sent it, at defendant's request, to the law firm of Morphy, Bradford & Cummins for collection, defendant agreeing to bear the expense incurred by the bank in making collection, and agreeing that, if the bank complied with his request, it should not have the effect of releasing him from liability on his indorsement. The attorneys notified the Waldref company that suit would be brought on the note unless it was paid. On receiving this notice, the plaintiff wrote to the bank, saying among other things:

"There can be nothing gained whatever in starting suit. Unless I find it is necessary to permit of a suit in order to hold my co-endoser to his part of the responsibility. * * * The purpose I have had in allowing this note to pass its due date is to hold Mr. Dow as an endorser."

When the bank recovered judgment it had an execution issued to the sheriff of Ramsey county, who returned it unsatisfied. An application was then made for the appointment of a receiver. While the application was pending, Mr. Daggett, as attorney for the company, notified the bank's attorneys that plaintiff would pay the amount due the bank and requested an assignment of the judgment. The bank insisted that the judgment should be satisfied by the Waldref company, and was then notified that plaintiff had a legal right to pay the debt and have the judgment assigned to him as security and that, if the bank persisted in its course of action, the company would claim damages for the injury to its credit. Payment from plaintiff was then accepted and the judgment assigned to him.

The evidence shows that from time to time the plaintiff made loans to the company, which amount in the aggregate to more than $20,000, and that other stockholders made loans aggregating over $6,000, and that this was necessary to enable the company to continue in business.

Defendant assails the findings as unwarranted by the evidence, and the conclusions of law as erroneous. He maintains that the Waldref company was solvent when the bank recovered its judgment and for two or three years thereafter; that plaintiff, as president, controlled the management of the company's affairs and should have directed that the note be paid out of the company's funds; that he had no right to allow the bank to take judgment, or to purchase the judgment, thus prolonging defendant's possible liability as an indorser.

The evidence would justify a finding that the company was solvent at the time the note was given and for some time thereafter in that the value of the assets exceeded the amount of the liabili-

ties. But the company was always a borrower, and it is a fair inference that at all times its working capital was insufficient. The sheriff's return of the execution unsatisfied and the application for the appointment of a receiver point to the conclusion that in the spring of 1922 the company had become financially embarrassed, and there is no convincing evidence of any subsequent improvement. The assets consisted largely of real estate, machinery, patents, good will and the value of experimental work which had been done. It appears from a financial statement made to the securities commission of this state in 1921 that the company had only about $5,900 in cash and accounts receivable, while its accounts and bills payable aggregated something over $21,000.

On the whole the evidence falls short of showing conclusively that the company should or could have paid the note when it fell due or that plaintiff manipulated the company's affairs in such a manner as to prejudice defendant's rights.

When plaintiff paid the company's debt, he became subrogated to all the rights the bank could have asserted against the defendant. By taking judgment against the maker of the note, the bank did not lose its right to call on defendant for payment, for he had expressly agreed that his liability should not be extinguished if the bank complied with his request and sued the maker of the note. The doctrine that the assignment of a judgment recovered on a note does not carry with it a right of action which the judgment creditor had against a remote indorser is not applicable here. Defendant is not a remote indorser. The indorsements were made simultaneously; hence § 68 of the negotiable instruments law (G. S. 1923, § 7111), providing that, as respects one another, indorsers are liable prima facie in the order in which they indorse, does not help the defendant. From the beginning plaintiff and defendant were equally liable for the payment of the note. Plaintiff has paid it and it would seem clear that he has a right to call upon the defendant for contribution. Contribution is sometimes defined as a payment made by any one of several, having a common liability, of his share of an amount necessarily paid by one in behalf of all.

As a general rule, where two persons are jointly, or jointly and severally, bound to pay a sum of money and one of them pays the whole and thereby relieves the other from liability, the person who made the payment may recover from him who failed to pay the aliquot proportion which he ought to pay. The rule applies to those who are bound as cocontractors. It is not based on contract but on the maxim that equality is equity. Van Brunt v. Gordon, 53 Minn. 227, 54 N. W. 1118; Township of Canosia v. Township of Grand Lake, 80 Minn. 357, 83 N. W. 346; Bolles v. Boyer, 141 Minn. 404, 170 N. W. 229. Cases from other jurisdictions will be found in 6 R. C. L. p. 1036. See also 13 C. J. 821, 822, where the rule is aptly stated as follows:

"The principle of equity on which the right of contribution is founded can apply only in cases where the situations of the parties are equal. * * * Within the meaning of this rule, the situations of the parties are equal when the parties are under a common burden or liability * * * provided their obligation is assumed in respect to one and the same transaction."

Numerous cases hold that when several persons indorse a note in succession, they are subject to liability in the order in which they indorse, and that the indorsement imports a several and successive, and not a joint, obligation, unless there be an agreement different from that evidenced by the indorsement. See Porter v. Huie, 94 Ark. 333, 126 S. W. 1069, 28 L.R.A.(N.S.) 1039. A smaller number hold that, even in the absence of an express agreement, indorsers for the accommodation of another are cosureties and consequently the law of contribution applies. These cases are collated in the note to Porter v. Huie, 94 Ark. 333, 126 S. W. 1069, 28 L.R.A.(N.S.) 1039, at pages 1042 and 1043. See also Owens v. Greenlee, 68 Colo. 114, 188 P. 721, 9 A. L. R. 1184; 6 R. C. L. p. 1052.

But all the authorities agree that when accommodation parties become equally liable for the same debt, the one who pays the debt has the right to have contribution from the other. In the case at bar, the circumstances clearly indicate that plaintiff and defend-

ant mutually intended to become equally liable for the payment of the note, and the finding of the trial court that they were joint indorsers is the only one which could well be made.

Whether we call plaintiff and defendant joint indorsers or co-sureties is of little importance under the circumstances of this case. They became obligated at the same time and in the same manner for the payment of the same debt. Plaintiff has discharged the obligation of both, and it is clear that in equity and good conscience defendant should reimburse him to the extent of one-half of the amount paid.

[2] Something is said in the briefs about laches. The fact that defendant's position may not have been changed to his detriment by reason of plaintiff's delay does not necessarily defeat the defense of laches, but as a general rule the defense cannot be successfully asserted unless the delay was culpable and prejudice resulted. See Briggs v. Buzzell, 164 Minn. 116, 204 N. W. 548, where the cases are reviewed. Plaintiff's delay in bringing this action did not result in any prejudice to the defendant. If he was prejudiced at all, it was by reason of the failure of the plaintiff, as the executive officer of the Waldref company, to cause the debt to be paid by the company. That feature of the case is covered by what is said in an earlier portion of this opinion.

Other matters referred to in the briefs do not require discussion. We think the case was decided correctly and that defendant has no just cause for complaint on any score.

Order affirmed.