Robert BARD, Plaintiff,

v.

BEMIDJI BOTTLE GAS COMPANY, Inc., and Solar Gas Company, Inc., Defendants and Third-Party Plaintiffs (G. J. Lynch and J. E. Lynch, d/b/a Lake Region Motel, Third-Party Defendants, and Sid Richardson Gasoline Co., Additional Third-Party Defendant).

John W. FETZNER, as trustee for the heirs and next of kin of Betty May Miller, Deceased, Plaintiff,

v.

BEMIDJI BOTTLE GAS COMPANY, Inc., and Solar Gas Company, Inc., Defendants and Third-Party Plaintiffs (G. J. Lynch and J. E. Lynch, d/b/a Lake Region Motel, Third-Party Defendants, and Sid Richardson Gasoline Co., Additional Third-Party Defendant).

Nos. 4–58 Civ. 37, 4–58 Civ. 38.

United States District Court
D. Minnesota,
Fourth Division.

Oct. 9, 1958.

A. Thomas Wurst, of Diessner, McEachron, Wurst & Bundlie, Minneapolis, Minn., for third-party defendant Sid Richardson Gasoline Co. in support of motion.

F. H. Durham, of Durham, Swanson & Lasley, Minneapolis, Minn., appeared

in behalf of defendants and third-party plaintiffs.

NORDBYE, Chief Judge.

These are companion cases which came before the undersigned on September 8, 1958, on a motion to quash the service on the third-party defendant Sid Richardson Gasoline Company.

On October 1, 1956, the two plaintiffs were staying in the Lake Region Motel at Longville, Minnesota. An explosion occurred allegedly through the leakage of bottled gas. The bottle gas equipment had been installed by Bemidji Bottle Gas Co., Inc. (hereinafter called Bemidji), and by Solar Gas Co. (hereinafter called Solar). Likewise, these companies supplied the bottle gas to the Motel. Mrs. Miller died as a result of the injuries incurred in the explosion, and the trustee for the heirs and next-of-kin, Felzner, has brought suit here, there being a diversity of citizenship. Bard, an Indiana resident, was not killed but sustained injuries for which he sues here.

Bemidji joined the motel owners as third-party defendants and obtained proper service upon them. Bemidji also has joined the Sid Richardson Gasoline Co. (hereinafter called Richardson), a Texas corporation, as an additional third-party defendant. Richardson supplied the liquified petroleum gas to Bemidji, and Bemidji asserts upon information and belief that the liquified petroleum gas was not properly odorized as required under Minnesota law. It further asserts that the non-odorized gas was the sole, or at least a contributing cause, of the explosion. After an abortive attempt to serve Richardson through H. L. Schmidley, a former representative of Richardson in Minnesota, Bemidji attempted to obtain service by serving the Secretary of the State of Minnesota as an authorized representative of Richardson under M.S.A. § 303.13. Bemidji also attempted to serve Richardson through Richardson's present representative in Minnesota, B. E. Patton. The summons, however, was not served upon Patton personally; it was left at Patton's home with his wife.

Richardson's motion to quash service is the sole question before the Court at this time. Rule 4, Subsections (d)(1) and (d)(7), Federal Rules of Civil Procedure, 28 U.S.C.A., provide that service may be had:

"Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

"Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

The Minnesota rule, Rule 4.03(c), provides that summons may be served:

"Upon a domestic or foreign corporation, by delivering a copy to an officer or managing agent, or to any other agent authorized expressly or impliedly or designated by statute to receive service of summons, and if the agent is one authorized or designated under statute to receive service any statutory provision for the manner of such service shall be complied with. * * * *"

In addition, M.S.A. § 303.13, a provision enacted in 1957, states:

"(3) If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort.·
\* \* \* "

■ Service was proper in this case either if M.S.A. § 303.13 applies, or if proper service was obtained upon Richardson under Minnesota Rule 4.03(c), or Federal Rule 4(d)(3). First, as to M.S. A. § 303.13, service upon the Secretary of State is sufficient (1) in an action growing out of a contract between Bemidji and Richardson if that contract was to be performed in whole or in part by either party in Minnesota, or (2) if Richardson committed a tort in whole or in part in Minnesota against a Minnesota resident.

As to a contract between Richardson and Bemidji, it is evident that no part of the contract was performed in Minnesota. Patton is a resident representative of Richardson, but he has no authority to enter contracts in Minnesota on behalf of Richardson. Patton's chief function is acquainting dealers with the Richardson product, promoting good will, and procuring acceptable dealers in addition to those already using the Richardson product. Whether or not Richardson's activities and those of its representative, Patton, constitute "doing business" in Minnesota in the usual sense is another

question, but Patton obviously has no authority to bind Richardson. Nor is delivery made in Minnesota under the contract. The liquified petroleum is shipped F. O. B. Tulsa, and Bemidji's payment on billings is sent to Fort Worth, Texas, rather than to Patton in Minnesota. Thus, no part of the contract is performed in Minnesota.

■ Whether or not Richardson committed a tort in whole or in part in Minnesota, against a Minnesota resident, is somewhat more difficult to decide. The answer, however, is equally as obvious on the tort question as on the contract question once all facets are considered.

In the first place, any tort which took place in Minnesota was committed against either Mrs. Miller or Bard. No tort was committed against Minnesota residents because Bemidji and Solar have not been damaged. They will be damaged, if at all, only when their liability toward Miller and Bard is determined. At that time Bemidji may be entitled to either contribution or indemnity. The Restatement, Restitution, Sec. 93, states:

"Where a person has supplied to another a chattel which because of the supplier's negligence or other fault is dangerously defective for the use for which it is supplied and both have become liable in tort to a third person injured by such use, the supplier is under a duty to indemnify the other for expenditures properly made in discharge of the claim of the third person, if the other used or disposed of the chattel in reliance upon the suppliers care and if, as between the two, such reliance was justifiable."

See also Lunderberg v. Bierman, 1954, 241 Minn. 349, 63 N.W.2d 355, 43 A.L.R. 2d 865.

Secondly, although Richardson's alleged liability may grow out of a tort liability to Miller and Bard, any liability over to Bemidji is not an action in tort.

42 C.J.S. Indemnity § 20 at p. 594, states:

"*The obligation to indemnify may grow out of an implied contractual relation or out of a liability imposed by law.* Thus, where one is compelled to pay money which in justice another ought to pay, or has agreed to pay, the former may recover from the latter the sums so paid unless the one making the payment is barred by the wrongful nature of his conduct. Similarly, if the party secondarily liable on an obligation is obliged to pay the obligation, he is entitled to full reimbursement from the party primarily liable." (Emphasis supplied.)

In Employers Mutual Casualty Co. v. Chicago, St. P., M. & O. Ry. Co., 1951, 235 Minn. 304, 50 N.W.2d 689, 693, the court stated:

"However, there is a more fundamental principle underlying the doctrine of contribution. *Contribution is based on the simple demand of justice, often expressed in the maxim that 'equality is equity.'* Van Brunt v. Gordon, 53 Minn. 227, 230, 54 N.W. 1118. One who has paid more than his share is entitled to contribution from the other to reimburse him for the excess so paid, thus equalizing their common burden. As the Wisconsin court said in Wait v. Pierce, 191 Wis. 202, 226, 209 N.W. 475, 210 N.W. 822, 823, 48 A.L.R. 276: ' * * * Whether the common obligation be imposed by contract or *grows out of* a tort, the thing that gives rise to the right of contribution is that one of the common obligors has discharged more than his fair equitable share of the common liability.'" (Emphasis supplied.)

These statements indicate that the claim to contribution or indemnity is not an action in tort, although the basis may be in tort. The obligation itself may be quasi contractual, one based upon statute, or an obligation arising out of the principles of equity. (By way of explanation, it should perhaps be mentioned that, although contribution and indemnity are not the same thing, they have the same basis, see Note, 38 Minn.L. Rev. 880. Thus it is unimportant whether Bemidji should be entitled to contribution or to indemnity so far as this motion is concerned.)

Inasmuch as Bemidji's action does not grow out of a contract with Richardson or a tort against itself, Bemidji has not obtained jurisdiction over Richardson under M.S.A. § 303.13.

■ As before mentioned, Bemidji also attempted to obtain personal service upon Richardson by serving Patton. The service, however, was actually made upon Patton's wife. Irrespective of whether or not Patton was a proper agent for service, the question arises as to whether such substituted service is allowable under the applicable statutes. No provision whatsoever is made in either the state or federal statutes allowing for service upon a corporate representative by leaving the summons at his place of abode. 1 Barron and Holtzoff, Federal Practice and Procedure, Sec. 179 (Pocket Part 1957) states:

"Since Rule 4(d)(3) requires delivery of a copy of the summons and complaint to the officer or agent, valid service on a corporation cannot be made by leaving the copy at the usual place of abode of the officer or agent as is permitted in serving an individual under Rule 4(d)(1)."

The supporting case is In re Eizen Furs, D.C.Pa.1950, 10 F.R.D. 137. This is undoubtedly the proper rule in spite of the constantly relaxing rules regarding process.

The motion to quash the service upon Richardson, therefore, must be granted. It is so ordered. An exception is allowed.